IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO.:

| | | |
|---|---|---|
| JORGE REYES BERMUDEZ, on behalf of himself and all other similarly situated persons, | ) ) ) | **COMPLAINT** |
| Plaintiffs, | ) ) | CLASS ACTION |
| v. | ) ) | |
| BRODIE CONTRACTORS INC. and JOSÉ ISABEL CARBAJAL CHAVEZ, | ) ) ) | COLLECTIVE ACTION 29 U.S.C. § 216(b) |
| Defendants. | ) ) | |
| _____ | ) | |

I.       PRELIMINARY STATEMENT

1.       This is a collective action under the Fair Labor Standards Act (FLSA) by a former employee and his similarly situated employees against their joint employers, defendant Brodie Contractors Inc. ("BCI") and BCI's construction superintendent defendant José Isabel Carbajal Chavez ("Carbajal"), who, along with Eulalia Rivas Duarte, d/b/a LW Mechanical, an unincorporated business association ("Duarte") and subcontractor of BCI and other similarly situated subcontractors, jointly employed the plaintiff and/or other similarly situated employees in North Carolina in 2019, 2020, 2021, and 2022.

2.       In that same time period, Duarte and/or those other similarly situated subcontractors and defendants BCI and Carbajal or some other BCI project superintendent(s) similarly situated to defendant Carbajal jointly suffered or permitted the

1

plaintiff and those similarly situated employees to work for substandard wages at less than the overtime rate required by the Fair Labor Standards Act ("FLSA") for all of the many workweeks longer than 40 hours when the weekly wages that the plaintiff and those employees received from those named defendants and Duarte and those subcontractors for that overtime work were not at the overtime rate required by the Fair Labor Standards Act ("FLSA").

3.     This former employee also seeks compensation for himself and the co-workers he seeks to represent under N.C.Gen.Stat. §§ 95-25.2(16), 95-25.6, and 95-25.13(1)-(2), and 13 NCAC §§12A.0803 and .0805(a)-(b) of the North Carolina Wage and Hour Act ("NCWHA") for unpaid promised wages that Duarte, and/or those other subcontractors, and one or both of the named defendants contracted with certain governmental or public entities and promised to pay the plaintiff and his co-workers at their promised regular rate for all hours worked in the same workweek plus an additional and stipulated percentage of that regular rate for all hours worked in excess of 40 in the same workweek when Duarte and/or those other subcontractors, and the named defendants jointly and severally suffered or permitted the plaintiff and those other employee to perform the bricklaying and cinderblock construction work that Duarte, one or more of those other subcontractors, and one or both of the named defendants had contracted to perform under BCI's contract with those same governmental or public entities.

4.     The defendant corporation Brodie Contractors Inc. (BCI) was and is part of a

single business enterprise owned and operated by its owner/officers Calvin Rudolph Brodie and Debra Long Brodie since at least 2005 in many of the counties in North Carolina and Tennessee that are listed in 28 U.S.C. §§ 113(a)-(c) and 123. Defendant Carbajal is and was a project superintendent for BCI who acted directly in the interest of an employer of the Plaintiff and other similarly situated persons furnished to BCI by Duarte and other similarly situated subcontractors who supervised, directed, and controlled on a day-to-day basis the work of the Plaintiff and those other similarly situated persons for BCI and Duarte in at least two publicly-funded construction projects in or around Fuquay-Varina and Wilmington, North Carolina from at least in or about August 2020 through in or about May 2021.

5.      Based upon their claims under 29 U.S.C. §§ 207 and 216(b) of the Fair Labor Standards Act, that are described in ¶¶1-2 and 4-5 above, the plaintiff and the collective group of workers he seeks to represent under the FLSA seek payment from the defendants of unpaid overtime wages and an equal amount of liquidated damages, attorney fees, interest, and costs under 29 U.S.C. §§ 207(a)(1) and 216(b).

6.      Based upon their claims under N.C.Gen.Stat. §§ 95-25.2(16), 95-25.6, 95-25.13(1)-(2), 95-25.22(a), and 95-25.22(a1) of the North Carolina Wage and Hour Act ("NCWHA") that are described in ¶¶3-4 above and the promised wages that Duarte, and/or other subcontractors of BCI that were and are similarly situated to Duarte and defendant BCI contracted to pay the plaintiff and the employees he seeks to represent as part of BCI's contract with the governmental or public entity to perform that bricklaying and cinderblock

construction work, the plaintiff and the class of workers that he seeks to represent under the NCWHA seek payment from the defendants of unpaid promised wages and an equal amount of liquidated damages, attorney fees, interest, and costs under N.C.Gen.Stat. §§ 95-25.22(a), (a1), and (d).

II.    JURISDICTION

7.    Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§1331 and 1337, 29 U.S.C. § 216(b), and 28 U.S.C. §1367(a).

8.    This Court has the power to grant declaratory relief pursuant to 28 U.S.C. Sections 2201 and 2202.

III.    VENUE

9.    Venue over this action lies in this Court pursuant to 28 U.S.C. §§1391(b)(1)-(2), 1391(c)(1)-(2), and 1391(d), and 29 U.S.C. §216(b).  At all times relevant to this action continuing through the present date, the defendants BCI's principal place of business and corporate office was and is located in Wake County, North Carolina.  At all times relevant to this action, upon information and belief, the principal residence of defendant Carbajal is and has been located in Alamance County, North Carolina.  At all times relevant to this action continuing through the present date, Duarte's principal place of business and residence was located in Johnston County, North Carolina.

10.    In addition, in the contracts that defendant BCI made with one or more governmental or public entities to perform the construction work that the plaintiff and the

4

employees he seeks to represent performed or were to perform in Wake County, North Carolina, and one or more other counties listed in 28 U.S.C. § 113(a)-(c), upon information and belief, defendant BCI contracted and promised to pay the plaintiff and those employees promised wages at the rate required by applicable law. Lastly, a substantial part of the underpaid work performed for the defendants by the plaintiff and the employees that he seeks to represent in this action giving rise to this action occurred in Wake County, North Carolina, and one or more of the counties listed in 28 U.S.C. § 113(a)-(c).

IV.     NAMED PLAINTIFF

11.     From in or about August 2020 and continuing through at least April or May 2021, defendant Brodie Contractors Inc. (BCI), BCI's project superintendent defendant Carbajal, and Duarte acting through its onsite supervisor Giovanny Alberto Rivas ("Rivas") jointly suffered or permitted the plaintiff Jorge Reyes Bermudez also known as Jorge B. Reyes ("plaintiff") and other similarly situated persons to work performing the bricklaying and cinderblock construction work called for by the contracts that defendant BCI obtained from certain governmental or public entities in eastern and central North Carolina such as those that are described in ¶13 below of this Complaint.

12.     During that entire time period and continuing through the present date, plaintiff and those persons furnished by Duarte worked exclusively for Duarte and defendants BCI and Carbajal on job sites that were jointly controlled exclusively by Duarte and those same defendants. During the time period of that employment, the plaintiff lived

5

and continues to live in Franklin County, North Carolina.

13.     During the entire time period described in ¶¶11-12 above, the work of the plaintiff consisted of hands-on brick and block masonry construction work in which Duarte and the defendants jointly suffered or permitted him to work as a member of crew of workers who were performing brick and block masonry construction work in connection with a contract(s) that BCI had with a public school(s) or some other public governmental entity to perform brick and block masonry construction work for one or more building(s) to be used by a public school(s) or some other public governmental entity in Fuquay-Varina, Wake County, and Wilmington, New Hanover County, North Carolina.

14.     Upon information and belief, as a material part of each contract that defendant BCI made with the each governmental or public entity referred to in ¶13 above to perform the brick and block masonry construction work referred to in that same paragraph, BCI contracted with each of those same governmental or public entities to pay promised wages to the plaintiff and the other employees of BCI that Duarte and defendants BCI and Carbajal jointly or severally suffered or permitted to do any part of that same work at a rate that was an additional and stipulated percentage of the regular rate for those hours worked in excess of 40 in the same workweek in addition to the promised regular rate for all hours worked in the same workweek by the plaintiff and other similarly situated employees whom Duarte and defendants BCI and Carbajal jointly and severally suffered or permitted to perform that same work.

6

15.     Upon information and belief, as a material part of each contract that BCI made with Duarte and each subcontractor of BCI for Duarte or that subcontractor to perform any part of the brick and block masonry construction work that is referred to in ¶¶11-14 above, Duarte and each such sub-contractor contracted with BCI to pay promised wages to the plaintiff and those other employees that Duarte, one or more of those subcontractors, and/or defendants BCI and Carbajal jointly suffered or permitted to do any part of that same work at a rate that was an additional and stipulated percentage of the regular rate for those hours worked in excess of 40 in the same workweek in addition to the promised regular rate for all hours worked in the same workweek by the plaintiff and other similarly situated employees of Duarte and that subcontractor whom the defendants jointly and severally suffered or permitted to perform that same work.

V.      DEFENDANTS

16.     At all times relevant to this action, the defendant Brodie Contractors Inc. (hereinafter referred to as "BCI") was and continues to be a single business enterprise and closely held for profit corporation owned and operated by Calvin Rudolph Brodie (Mr. Brodie) and his spouse Debra Long Brodie (Mrs. Brodie) since at least 2006. Defendant BCI is a general contracting company that specializes in large commercial masonry construction projects for public, governmental, and private customers.

17.     During each of the four chronological years immediately preceding the date on which this action was filed and for the entire time period and all of the workweeks

7

described in all parts of ¶¶30 and 37 below, upon information and belief, and according to the information contained on its online website http://www.brodiecon.com/our-company, defendant BCI was and is an enterprise engaged in commerce or in the production of goods for commerce that employs and employed more than 300 people and that:

(a)     had and has employees handling, selling, or otherwise working on trucks, construction equipment, and other goods and materials that have been moved in or produced for interstate commerce by some person or entity other than BCI, and

(b)     is and for each chronological year starting with October 1, 2017 and continuing through the present date, was an enterprise whose annual gross volume of sales made or business done is and was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

18.     Upon information and belief, as part of its contracts with the governmental, public entities, or private entities described in ¶¶11-17 above with all of those governmental, public, or private entities with which it had any contract to perform brick and block masonry construction work of the type and for the time periods described in all parts of ¶¶30 and/or 37 below, upon information and belief, defendant BCI, acting by and through one or more of its authorized agent(s) and employee(s), disclosed to the plaintiff and the members of the FLSA collective action described in ¶¶28-29 above and the members of the class actions alleged in ¶¶30(a)-(b) and 37(a)-(b) pursuant to N.C.Gen.Stat. §§ 95-25.13(1), 95-25.2(16) and 95-25.6, BCI's employment practices and policies with regard to payment of promised

8

wages and the payment of interest on unpaid promised wages (as the word "wage" and phrase "promised wages" are defined and used in the NCWHA) due the plaintiff and the other similarly situated employees that are described in ¶¶11-15 above, and ¶¶30(a)-(b), 32-33, 37(a)-(b), and 39-40 below for the plaintiff and those other persons whom defendant BCI jointly suffered or permitted to perform hands-on brick and block masonry construction work totaling less, equal to, or more than 40 hours worked in the same workweek.

19.    At all times relevant to this action since at least January 1, 2006, Calvin Rudolph Brodie was and continues to be the President of defendant BCI and Debra Long Brodie was and continues to be the Secretary of defendant BCI.  As of the date that this action was filed, Calvin R. Brodie, 3901 Computer Dr., Raleigh, NC 27609-6626, was and continues to be the Registered Agent for Service of Process on BCI.

20.    During the entire time period relevant to this action, defendant José Isabel Carbajal Chavez ("Carbajal") is and was a project superintendent for BCI who acted directly in the interest of an employer of the Plaintiff and other similarly situated persons furnished to BCI by Duarte and other subcontractors who supervised, directed, and controlled on a day-to-day basis the work of the Plaintiff and those other similarly situated persons for BCI and Duarte in at least two publicly-funded construction projects in or around Fuquay-Varina and Wilmington, North Carolina from at least in or about August 2020 through in or about May 2021.

21.    This supervision, direction, and control by defendant Carbajal included the

daily work assignments for the Plaintiff and his co-workers, daily decisions as to how and when that work was to be performed and what equipment was to be used by the Plaintiff and those co-workers to perform that work, and joint decisions with Duarte as to the rate of pay for that work for the plaintiff and his similarly situated co-workers.

22.    During the entire time period relevant to this action, Eulalia Rivas Duarte ("Duarte") was and is an individual who, along with Giovanny Alberto Rivas ("Alberto"), and Angelica Rivas, was doing business as LW Mechanical, an unincorporated business association, and a sub-contractor of BCI whose field supervisor, Alberto, was and is acting under the day-to-day supervision, direction, and control of defendant Carbajal or some other project superintendent(s) or other supervisory staff employed directly by BCI to perform the bricklaying and cinderblock construction work called for by the contracts that defendant BCI obtained from certain governmental or public entities in eastern and central North Carolina.

23.    On information and belief, at all times relevant to this action, the corporate headquarters and principal office of BCI was and continues to be located at 3901 Computer Drive, Raleigh, North Carolina 27609-6626.

24.    On information and belief, at all times relevant to this action, defendant Carbajal resided at 201 Climbing Aster Court, Mebane, North Carolina 27302 in Alamance County, North Carolina.

25.    Upon information and belief, at all times on and after April 1, 2018, Duarte

has done and continues to do business as LW Mechanical, an unincorporated business association, at one or more locations within the State of North Carolina exclusively pursuant to contracts with BCI to perform all or a part of the brick and block masonry construction work called for by BCI's contracts to provide brick and block masonry construction work for various types of housing and other buildings. Upon information and belief, Duarte has resided and continues to reside in or around 111 East Fayetteville Street, Micro, North Carolina 27555 from at least April 1, 2018 through the present date.

26. Through the use of vehicles and fuel supplied and maintained and funds that BCI provided and continues to provide, defendant Carbajal and other onsite project superintendents like him direct, control, and supervise the hands-on work of the plaintiff and other similarly situated persons whom the defendants jointly and severally suffered or permitted to do the brick and masonry construction work that defendant BCI had contracted to perform that is described in ¶¶11-16 above, and ¶¶28-29, 30(a)-(b), and 37(a)-(b) below of this Complaint.

27. Upon information and belief, without the receipt of regular, weekly payments from BCI, Duarte and other similarly situated subcontractors like Duarte that were used by BCI to perform the work that is described in ¶¶11-16 above, and ¶¶28-29, 30(a)-(b), and 37(a)-(b) below did not have the economic means or funds on deposit in a banking account to pay on a regular, weekly basis any of the workers who were members of the crews of workers that BCI and subcontractors like Duarte jointly suffered or permitted to perform the

work that is described in ¶¶11-16 above, and ¶¶28-29, 30(a)-(b), and 37(a)-(b) below of this Complaint.

VI.    FLSA STATUTORY CLASS ACTION ALLEGATIONS

28.    The named plaintiff maintains this action against the defendants for and on behalf of himself and all other similarly situated persons who were and/or are being furnished  by Duarte or some other similarly situated subcontractor(s) of BCI to defendants BCI, Carbajal, or some other BCI project superintendent whom defendants BCI, Carbajal, such other BCI project superintendent jointly suffered or permitted to perform hours worked in excess of 40 hours in the same workweek in the brick and block masonry enterprise of BCI described in ¶¶16-17 above in the construction of both privately funded buildings and public schools or other buildings for use by publicly funded governmental entities in and around Wake County, New Hanover County, and one or more other counties in North Carolina listed in 28 U.S.C. §§ 113(a)-(c) in every workweek ending in the three chronological years immediately preceding the date on which this action was filed and continuing thereafter ending on the date final judgment in this action is entered by a U.S. District Court pursuant to the statutory collective action procedure specified at 29 U.S.C. §216(b) for each such similarly situated current and/or former employee of the defendants in that same time period who files, will file, or who has filed a written consent to be a party to this action that is required by 29 U.S.C. §216(b) within the applicable statute of limitation(s) for any such workweek.

29. The collective class of similarly situated persons under 29 U.S.C. §216(b) described in ¶28 above is comprised of all of the members of all crews of workers, including all the members of all crews of workers furnished by Duarte or by other similarly situated subcontractors of BCI like Duarte whom Duarte, those other subcontractors, and defendants BCI and Carbajal or some other BCI project superintendent jointly suffered or permitted to work for defendants BCI, Carbajal, or one or more other similarly situated BCI project superintendent(s) like Carbajal in the construction of one or more of the brick and block masonry construction projects of the type described in ¶28 whom Duarte, those other similarly situated subcontractors of BCI like Duarte, defendants BCI and Carbajal, and those other project superintendents did not pay at the rate required by 29 U.S.C. § 207(a)(1) for the hours in the same workweek when the plaintiff and those employees were jointly suffered or permitted to work for BCI in the enterprise described in ¶¶16-17 above for a workweek longer than forty hours.

VII. FIRST RULE 23(b)(3) CLASS (NCWHA §§ 95-25.6 & 95-25.13(1)-(2))

30. The named plaintiff seeks to represent a class of persons under Rule 23(b)(3), Fed. R. Civ. P., for unpaid promised wages, liquidated damages, and interest under N.C. Gen. Stat. §§ 95-25.2(16), 95-25.6, 95-25.13(1)-(2), and 95-25.22(a)-(a1), and 13 NCAC Tit. 12 §§ .0803 and .0805(a)-(b) that consists of the named plaintiff and all other similarly situated current and/or former persons whom Duarte, some other similarly situated subcontractor(s) of BCI, and defendant BCI jointly suffered or permitted to work in the

defendant's enterprise described in ¶¶16-17 above, and who:

(a)     Defendant BCI jointly suffered or permitted to perform hours worked in excess of a total of 40 hours in any workweek ending in the two chronological years immediately preceding the date on which this action was filed and continuing thereafter ending on the date final judgment in this action is entered by a U.S. District Court in the brick and block masonry construction of public schools or other buildings for use by publicly funded governmental entities in and around Wake County, New Hanover County, and/or one or more other counties in North Carolina listed in 28 U.S.C. §§ 113(a)-(c) when defendant BCI failed to comply with the contract and promises that BCI made with those same governmental entities to pay promised wages to those same employees of defendant BCI who worked more than 40 hours in the same workweek at a rate that was at an additional stipulated percentage of the regular rate for those hours worked in excess of forty hours in the same workweek in addition to the promised regular rate for all hours worked in the same workweek by the plaintiff and other similarly situated employees whom the defendants jointly suffered or permitted to perform that same bricklaying and cinderblock construction work, and

(b)     Did not receive interest at the legal rate set forth in N.C.Gen.Stat. § 24-1 from the date that each amount of those same promised wages described in ¶¶28, 29, and 30(a) above first came due.

31.     On information and belief, the class defined in ¶¶30(a)-(b) above of this

complaint consists of in excess of 100 persons. Joinder of all class members would be impracticable if not impossible based upon the extreme geographic dispersion of many of the class members a substantial percentage of which are persons who used to be jointly employed by Duarte, one or more similarly situated subcontractors of BCI, and defendant BCI, and the limited ability to communicate in English of a significant number of the class members.

32.    The questions of law or fact which are common to the members of this class, and which predominate over any other questions affecting the individual members of this class under Rule 23(b)(3), Fed.R.Civ.P., are: (a) Whether the defendant BCI operated the enterprise that is alleged and described in ¶¶16-17 above of this complaint? (b) Whether the defendant jointly or exclusively employed the named plaintiff and the class members defined in ¶¶30(a)-(b) above that he seeks to represent as part of the enterprise that is described in ¶¶16-17 above? (c) Whether defendant jointly or exclusively employed the plaintiff and the members of the class defined in ¶¶30(a)-(b) above for in excess of 40 hours worked during any workweek during the time period covered by the class defined in ¶¶30(a)-(b) above? (d) Whether BCI had the contracts with governmental entities that are alleged in ¶¶11-14, and 30(a) above, and ¶33(a) below of this Complaint? (e) Whether BCI made the disclosures described in ¶18 above of this Complaint?, and (f) Whether BCI failed to pay plaintiff and the members of the class described in ¶¶30(a)-(b) the promised wage described therein?

33.     The claim of the named plaintiff is typical of the claims of the class of persons defined in ¶¶30(a)-(b) above in that:

(a)     The defendant BCI operated the enterprise that is alleged and described in ¶¶16-17 above of this complaint in which BCI jointly or exclusively employed the named plaintiff and the class members defined in ¶¶30(a)-(b) above that he seeks to represent as part of the enterprise that is described in ¶¶16-17 above.

(b)     The defendant BCI jointly or exclusively employed the plaintiff and the members of the class defined in ¶¶30(a)-(b) above for in excess of 40 hours worked during every workweek during the time period covered by the class defined in ¶¶30(a)-(b) above.

(c)     Upon information and belief, defendant BCI had the contracts with governmental or public entities with the terms and stipulations that are alleged in ¶¶11-14 and 30(a) above of this Complaint.

(d)     Defendant BCI, acting directly and/or by and through its authorized agents, made the disclosures described in ¶18 above of this Complaint to the plaintiff and the employees he seeks to represent.

(e)     Defendant BCI failed to pay plaintiff and the members of the class described in ¶30(a)-(b) the promised wages described therein?

34.     The named plaintiff will fairly and adequately represent the interests of the class of persons defined in ¶¶30(a)-(b) above of this complaint.  The undersigned counsel for the named plaintiff is an experienced litigator who has been name counsel for many

16

class actions.

35.     Plaintiff's counsel is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the members of the class defined in ¶30(a)-(b) under Rule 23(b)(3).

36.     A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

(a)     The common issues of law and fact, as well as the relatively small size of the individual claims of each member of the class defined in ¶¶30(a)-(b) above, substantially diminish the interest of members of the class defined in ¶¶30(a)-(b) to individually control the prosecution of separate actions;

(b)     Many members of the class defined in ¶¶30(a)-(b) are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

(c)     Upon information and belief, there is no pending litigation against the corporate defendant BCI named in this action by the members of the class defined in ¶¶30(a)-(b) above to determine the questions presented, and, upon information and belief, the FLSA and NCWHA claims alleged in this action have not been the subject of any previous litigation;

(d)     It is desirable that the claims be heard in this forum because the corporate defendant's sole permanent office is located in this district, and its two corporate officers reside in this district, and the plaintiff's cause of action arose in this district;

17

(e)     A class action can be managed without undue difficulty because the defendant BCI regularly committed the violations complained of herein, and were required to and, upon information and belief, did maintain detailed records concerning each member of the class defined in ¶¶30(a)-(b) above.

VIII.   SECOND RULE 23(b)(3) CLASS (NCWHA §§ 95-25.6 & 95-25.13(1)-(2))

37.     The named plaintiff seeks to represent a class of persons under Rule 23(b)(3), Fed. R. Civ. P., for unpaid promised wages, liquidated damages, and interest under N.C. Gen. Stat. §§ 95-25.2(16), 95-25.6, 95-25.13(1)-(2), and 95-25.22(a)-(a1), and 13 NCAC Tit. 12 §§ .0803 and .0805(a)-(b) that consists of the named plaintiff and all other similarly situated current and/or former persons whom Duarte, some other similarly situated subcontractor(s) of BCI, and the defendant BCI jointly suffered or permitted to work in the defendant's enterprise described in ¶¶16-17 above, and who:

(a)     Performed hours worked in excess of, equal to, or less than 40 hours worked in any workweek ending in the two chronological years immediately preceding the date on which this action was filed and continuing thereafter ending on the date final judgment in this action is entered by a U.S. District Court in the brick and block masonry construction of any building or structure in and around Wake County, New Hanover County, and/or one or more other counties in North Carolina listed in 28 U.S.C. §§ 113 (a)-(c), and

(b)     Duarte, some other similarly situated subcontractor of BCI, and defendant BCI failed to pay on their regular payday the plaintiff and those similarly situated persons

18

all promised wages, earned and accrued regular, straight and premium wages rates, for all those workweeks for the total hours worked in each workweek, including a wage premium of an additional and stipulated percentage of the hourly regular rate for those hours worked in excess of 40 in the same workweek in addition to the promised regular rate for all hours worked in the same workweek by the plaintiff and other similarly situated employees whom Duarte and defendant BCI jointly suffered or permitted to perform that same work.

38.     On information and belief, the class defined in ¶¶37(a)-(b) above of this complaint consists of in excess of 100 persons.  Joinder of all class members would be impracticable if not impossible based upon the extreme geographic dispersion of many of the class members a substantial percentage of which are persons who used to be jointly employed by Duarte, one or more similarly situated subcontractors of BCI, and defendant BCI, and the limited ability to communicate in English of a significant number of the class members.

39.     The questions of law or fact which are common to the members of this class, and which predominate over any other questions affecting the individual members of this class under Rule 23(b)(3), Fed.R.Civ.P., are: (a) Whether the defendant BCI operated the enterprise that is alleged and described in ¶¶16-17 above of this complaint? (b) Whether the defendant BCI jointly or exclusively employed the named plaintiff and the class members defined in ¶37(a)-(b) above that the plaintiff seeks to represent as part of the enterprise that is described in ¶¶16-17 above? (c) Whether defendant BCI jointly or exclusively employed

the plaintiff and the members of the class defined in ¶¶37(a)-(b) above for less than, equal to, or in excess of 40 hours worked during any workweek during the time period covered by the class defined in ¶¶37(a)-(b) above? (d) Whether defendant BCI, acting directly and/or by and through its authorized agents, made the disclosures described in ¶18 above of this Complaint to the plaintiff and the employees he seeks to represent.? (e) Whether defendant BCI failed to pay plaintiff and the members of the class described in ¶¶37(a)-(b) the promised wages described therein for all hours worked when those wages were due on their regular payday?

40.    The claim of the named plaintiff is typical of the claims of the class of persons defined in ¶¶37(a)-(b) above in that:

(a)    The defendant BCI operated the enterprise that is alleged and described in ¶¶16-17 above of this complaint in which BCI jointly or exclusively employed the named plaintiff and the class members defined in ¶¶37(a)-(b) above that he seeks to represent as part of the enterprise that is described in ¶¶16-17 above.

(b)    The defendant BCI jointly or exclusively employed the plaintiff and the members of the class defined in ¶¶37(a)-(b) above for less than, equal to, or in excess of 40 hours worked during every workweek during the time period covered by the class defined in ¶¶37(a)-(b) above.

(c)    Defendant BCI, acting directly and/or by and through its authorized agents, made the disclosures described in ¶18 above of this Complaint to the plaintiff and the

20

employees he seeks to represent.

(d)     Defendant BCI failed to pay plaintiff and the members of the class described in ¶¶37(a)-(b) the promised wages described therein on their regular payday?

41.     The named plaintiff will fairly and adequately represent the interests of the class of persons defined in ¶¶37(a)-(b) above of this complaint.  The undersigned counsel for the named plaintiff is an experienced litigator who has been name counsel for many class actions.

42.     Plaintiff's counsel is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the members of the class defined in ¶¶37(a)-(b) under Rule 23(b)(3).

43.     A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, inter alia:

(a)     The common issues of law and fact, as well as the relatively small size of the individual claims of each member of the class defined in ¶¶37(a)-(b) above, substantially diminish the interest of members of the class defined in ¶¶37(a)-(b) to individually control the prosecution of separate actions;

(b)     Many members of the class defined in ¶¶37(a)-(b) are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

(c)     Upon information and belief, there is no pending litigation against the corporate defendant BCI named in this action by the members of the class defined in

¶¶37(a)-(b) above to determine the questions presented, and, upon information and belief, the FLSA and NCWHA claims alleged in this action have not been the subject of any previous litigation;

(d)     It is desirable that the claims be heard in this forum because the corporate defendant's sole permanent office is located in this district, and its two corporate officers reside in this district, and the plaintiff's cause of action arose in this district;

(e)     A class action can be managed without undue difficulty because the defendant BCI regularly committed the violations complained of herein, and were required to and, upon information and belief, did maintain detailed records concerning each member of the class defined in ¶¶37(a)-(b) above.

IX.     FACTUAL ALLEGATIONS

44.     Over the estimated 39 weeks that the plaintiff worked starting in June 2020 and ending the last full week of May 2021 plaintiff estimates that his average workweek was approximately 44.5 hours per week, and the average regular rate that the plaintiff was paid during that time was an estimated $14/hour with no extra premium paid for those 25 workweeks during that same time period when the plaintiff worked more than 40 hours in the same workweek.  Based upon these estimates, the plaintiff estimates that he is owed at least $1,228.50 in unpaid overtime wages under 29 U.S.C. § 207(a)(1), and a similar amount under N.C.Gen.Stat. §§ 95-25.2(16), 95-5.6, and 95-2513(1)-(3), and 13 NCAC §§ 12.0803 and 12.0805.

45. Through their regular personal presence by their supervisory agents defendant Carbajal and Rivas for joint employer Duarte at the worksites at which the plaintiff and other similarly situated persons performed the hours worked in the workweeks that are described in ¶¶28-29, 30, 37, and 44 above of this Complaint and through their personal review of and involvement in the payments made as wages to the plaintiff and those other similarly situated persons, the defendants knew or should have known that the plaintiff and the other similarly situated employees described in ¶¶28-29, 30, 37, and 44 above regularly worked more than 40 hours and other hours in the same workweek for which they were not paid promised wages on their regular payday at the rate required by 29 U.S.C. §207(a)(1) and at the rate that was disclosed to them as described in ¶18 above and ¶¶49-50 below.

46. Duarte and the defendants also failed to pay the plaintiff and the similarly situated employees described in ¶¶30(a)-(b) and 37(a)-(b) above all promised earned and accrued regular, straight, and wages at the promised premium rates described in ¶¶14 and 18 above of this Complaint in those workweeks when the total of hours worked in the same workweek exceeded 40, which are and were a part of all of those employees' accrued and earned wages, and which should have been paid when they were due on the regular payday for those same employees.

47. For the plaintiff and the similarly situated employees described in ¶37(a)-(b), that failure by Duarte and the defendants in part consisted of their failure to pay the promised hourly rate of at least $14/hour and an orally promised increase to $15/hour for all

23

hours worked on their regular payday when it was due, which is a part of all of those employees' accrued and earned wages, and which should have been paid when it was due on regular payday for those same employees.

48.     For the plaintiff and the similarly situated employees described in ¶¶30(a)-(b), that failure by Duarte and the defendants also consisted of their failure to pay to the plaintiff and those similarly situated employees described in ¶¶30(a)-(b) wages at the promised rates described in ¶14 above of this Complaint in those workweeks when the total of hours worked in the same workweek exceeded 40, which are and were a part of all of those employees' accrued and earned wages, and which should have been paid when they were due on the regular payday for those same employees pursuant to the disclosures that are described in ¶18 above.

49.     When the plaintiff and other similarly situated persons described in ¶¶11-15, 30(a)-(c), 32-34, 37(a), and 39-41 above were first hired by Duarte and Defendants BCI and Carbajal in the two year time period immediately preceding the date on which this action was filed, Duarte and BCI, acting directly or by and through one or more of its authorized agent(s) and employee(s) including Rivas or defendant Carbajal orally disclosed at the time of hiring Duarte's and defendant BCI's employment practices and policies with regard to payment of promised wages and the payment of interest on unpaid promised wages to the plaintiff and the other similarly situated employees that are described in ¶¶11-15, ¶¶30(a)-(b), 32-34, 37(a)-(b), and 39-41 above  for the plaintiff and those employees who performed

24

hands-on work totaling less than, equal to, or more than 40 hours worked in the same workweek that Duarte and defendants BCI and Carbajal jointly employed those same employees.

50.     The regular hourly rate that was orally disclosed to the plaintiff and those similarly situated employees when were first hired was $14/hour.

51.     However, both before and after that hourly rate was increased to $15/hour for the plaintiff and those same similarly situated employees sometime in 2020 or 2021 by Duarte and/or defendants BCI and Carbajal while the plaintiff and those other similarly situated employees were still jointly employed by Duarte and the defendants, Duarte and defendants BCI and Carbajal, acting directly or by and through one or more of its authorized agent(s) and employee(s) including Rivas, did not make available in writing or through a posted notice maintained in a place accessible to the plaintiff and those same other similarly situated employees the existing or changed employment practices and policies with regard to promised wages for the plaintiff and those other similarly situated employees that Duarte, those other similarly situated subcontractors of BCI and the defendants jointly suffered or permitted to perform the work that is described in ¶¶11-16, 30(a)-(b), 32-33, 37(a)-(b), and 39-40 above.

52.     At all times in the both the three year time period and the two year time period immediately preceding the date on which this action was filed and continuing thereafter, Duarte and other subcontractors of defendant BCI who were and are similarly

situated to Duarte and the defendants jointly suffered or permitted the named plaintiff and/or the similarly situated employees of the defendants that are described in ¶¶11-30(b), inclusive, and 37(a)-(b) above of this complaint to work as members of one or more crews of workers in the defendant BCI's enterprise that is described in ¶¶16-17 above on job sites that were owned or controlled exclusively by the defendant BCI to perform brick and block masonry construction work for the defendant BCI's customers in North Carolina for varying periods of time described in ¶¶11-30(b), inclusive, and ¶37(a)-(b) above of this complaint in that same enterprise. At all times relevant to this action, Duarte or other subcontractors of BCI who were and are similarly situated to Duarte and the defendants regularly suffered or permitted a workforce of, upon information and belief, at least one hundred (100) laborer and working supervisors employees to perform brick and block masonry construction work exclusively for BCI.

53. During the entire time period described in ¶¶11-30(b), inclusive, and ¶37(a)-(b) above and for the workweeks and entire time period described in ¶¶30(a) and 37(a)-(b) above, the hands-on work of the plaintiff and all members of the classes and collective action described in ¶¶28-30(a)-(b) and 37(a)-(b) above consisted of brick and block masonry construction work in which Duarte or other similarly situated subcontractors of BCI and the defendants jointly suffered or permitted the Plaintiff and other similarly situated persons to work as a member of a crew(s) of workers to perform brick and block masonry construction work in connection with either a contract that BCI negotiated with a

public school(s) or some other public governmental entity or with a private business entity to perform brick and block masonry construction work for one or more building(s) to be used by a public school(s), some other public governmental entity, or some other private business entity located in Fuquay-Varina, Wake County, and Wilmington, New Hanover County, North Carolina, or in some other county in North Carolina listed in 28 U.S.C. § 113(a)-(c).

54.     Upon information and belief, as a material part of each contract that defendant BCI made with the each governmental entity referred to in ¶¶11-14 above to perform the brick and block masonry construction work referred to in those same paragraphs, BCI contracted with each of those same governmental entities to:

(a)     Pay promised wages to the plaintiff and the other employees of BCI that he seeks to represent at a rate that was an additional and stipulated percentage of the regular rate for those hours worked in excess of 40 in the same workweek in addition to the promised regular rate for all hours worked in the same workweek by the plaintiff and those other similarly situated employees whom the defendant BCI jointly suffered or permitted to perform the bricklaying and cinderblock construction involved in the work that defendant BCI contracted to perform, and

(b)     Comply with all safety and health employment related laws with regard to the persons that BCI jointly suffered or permitted to work to perform the bricklaying and cinderblock construction involved in the work that defendant BCI contracted to perform.

27

(c)     Comply with all other applicable employment related laws with regard to the persons that defendant BCI jointly suffered or permitted to work performing the bricklaying and cinderblock construction involved in the work that defendant BCI contracted to perform.

55.     For safety and health employment related laws, defendant BCI advertises on its website that it has and actually does have a safety program in which it ". . . is committed to encouraging and promoting a proactive safety culture, and providing a safe working environment."  As part of that program, defendant BCI also advertises on its website that it will and actually does ". . . assure that all employees receive safety training before beginning work with us, and provide regular re-training" and that defendant BCI's ". . . Safety Director holds [and actually does hold] regular safety talks on all job sites. She also visits all job sites weekly to ensure that safety requirements are being met, and that all masons, laborers, and superintendents have the proper safety equipment."  Defendant BCI also advertises on that same website that it has and actually does have ". . . trained personnel on all of our job sites to perform daily scaffolding inspection." http://www.brodiecon.com/our-company ("Safety").

56.     Defendant BCI, acting through its agents and project superintendents such as defendant José Isabel Carbajal Chavez, directed, controlled, and supervised the work of the plaintiff and the persons furnished by subcontractors like Duarte whom the plaintiff seeks to represent who performed bricklaying and cinderblock construction work with the named

plaintiff at the building sites of defendant BCI in or around Fuquay-Varina, Wilmington, and other locations in North Carolina. That direction and control included but was not limited to:

(a)    Regular determinations by those project superintendents as to order, nature, and specific work assignments for the named plaintiff and the employees described in ¶¶28, 29, 30(a)-(b), and 37(a)-(b) above of this Complaint,

(b)    Regular decisions by those same project superintendents as to the number of employees from the workers described in ¶¶28, 29, 30 (a)-(b), and 37(a)-(b) above who would be allowed to work at a particular worksite along with the named plaintiff,

(c)    Regular decisions by those same project superintendents and their agents, and the crew foreman as to when, if, and for how long the named plaintiff and the other employees described in ¶¶28, 29, 30(a)-(b), and 37(a)-(b) above would be allowed compensated rest periods during their workday, and

(d)    Regular decisions by those project managers, their agents, and crew foreman as to the creation and operation of a payroll recordkeeping system and wage payment system for the work performed by the named plaintiff, and the employees described in ¶¶28, 29, 30(a)-(b), and 37(a)-(b).

57.    Upon information and belief, the defendant BCI contributed to the payment of the cost for workers' compensation insurance for the work performed by the plaintiff or at least some of the workers in the crews furnished by Duarte and other similarly situated

subcontractors of BCI whom the plaintiff seeks to represent in this action that BCI suffered or permitted to work as part of the defendant's enterprise that is described in ¶¶16-17 above.

58. The defendant BCI purchased, supplied, fueled, and maintained all of the major materials, supplies, equipment and vehicles that were necessary for the day to day operation of the job sites at which the named plaintiff and his co-workers performed bricklaying and cinderblock construction work for BCI's customers. The equipment supplied by the defendants included, but was not limited to generators, masonry saws, fuel for the generators, wood for the pallets, and other materials and equipment including the pickup trucks used by the project superintendent furnished by BCI to get to and from the worksite on a daily basis.

59. Upon information and belief, on a regular and periodic basis that corresponded to shortly before the date on which defendant Duarte and other similarly situated subcontractors physically delivered the paycheck to the plaintiff and other persons furnished by Duarte and other similarly situated subcontractors of BCI for the work that Duarte, other similarly situated subcontractors of BCI, and the defendants jointly suffered or permitted the plaintiff and his similarly situated workers to perform that is described in¶¶11-15, 28-29, 30(a)-(b), and 37(a)-(b) above, defendant BCI supplied Duarte and all other similarly situated subcontractors of BCI with all of the funds necessary to pay the named plaintiff and their co-workers, and also determined their rates of pay, and when and how they were paid, and whether those payments were

by check, direct deposit, or by cash.

60.     Acting on behalf of BCI, project superintendents like Isabel Carbajal as BCI project managers like Kevin Hunter had co-equal and final say as to who was hired to do bricklaying and cinderblock construction work for BCI's customers. Defendants BCI and those same individuals also had the right to fire the named plaintiff and the employees he seeks to represent any time as at will employees.

61.     Acting on behalf of BCI, and upon information and belief, those same individuals described in ¶60 above had co-equal and final say as to who was fired or disciplined for misconduct at work in the work that the named plaintiff and the employees he seeks to represent performed for the defendant BCI.

62.     Duarte and other similarly situated subcontractors of BCI like Duarte, the plaintiff and the persons described in ¶¶28-29, 30(a)-(b), and 37(a)-(b) above that he seeks to represent did not and do not operate an independent business, and they all were economically dependent upon defendant BCI for work and wages on a day to day basis.

63.     Going back to at least 2017, in each project that BCI contracted to provide brick and block masonry construction work, BCI determined the amount, method and frequency of wages paid to the plaintiff and/or the employees he seeks to represent that are described in ¶¶28, 29, 30(a)-(b), and 37(a)-(b), inclusive, above.

64.     Duarte and the defendants jointly suffered or permitted the plaintiff and the other members of the crews of employees he worked with to perform brick and block

masonry construction for BCI for many six-day workweeks lasting close to or more than 50 hours per workweek, for the entire time period described in ¶¶28, 29, 30(a)-(b), and 37(a)-(b) above.

65.     The defendant BCI made the disclosures described in ¶¶18 and 49-50 above at least in part in the form of various posters, notices, and documents that the defendant BCI posted at its headquarters office and at the various project sites at which the plaintiff and the employees he seeks to represent were, are and/or will be employed during the time periods described in ¶¶28, 29, 30(a)-(b), and 37(a) above containing information relating to that required by 13 NCAC §12.0805(a), 29 C.F.R. § 516.4, N.C.Gen.Stat. § 95-25.15(c), and the terms of those contracts that are described in ¶¶11-15, 30(a)-(b) and 37(a)-(b) above.

66.     In the time period beginning with the date falling three chronological years immediately preceding the date on which this action was filed and ending with the date this action was filed, Duarte or some other similarly situated subcontractor of BCI like Duarte and defendants BCI and Carbajal or some other similarly situated project superintendent of BCI like Carbajal jointly suffered or permitted the persons described in ¶¶28-29 above to work at least four workweeks in each of those same three (3) chronological years in which they all performed more than 40 hours worked for Duarte or some other similarly situated subcontractor of BCI like Duarte and defendants BCI and Carbajal or some other BCI project superintendent similarly situated to Carbajal doing brick and block masonry construction work in the defendant BCI's enterprise described in ¶¶16-17 above.

67. In the time period beginning with the date falling two chronological years immediately preceding the date on which this action was filed and ending with the date on which this action was filed, Duarte or some other similarly situated subcontractor of BCI like Duarte and defendants BCI and Carbajal or some other similarly situated project superintendent of BCI like Carbajal jointly suffered or permitted the persons described in ¶¶28-29, 30(a)-(b), and 37(a)-(b), inclusive, above to work at least four workweeks in each of those same two (2) chronological years in which in which they all performed more than 40 hours worked for Duarte or some other similarly situated subcontractor of BCI like Duarte and defendants BCI and Carbajal or some other BCI project superintendent similarly situated to Carbajal doing brick and block masonry construction work in the defendant BCI's enterprise described in ¶¶16-17 above.

68. During all of calendar years 2019, 2020, 2021, and continuing, upon information and belief thereafter in 2022 to date, Duarte or some other similarly situated subcontractor of BCI like Duarte and defendants BCI and Carbajal or some other similarly situated project superintendent of BCI like Carbajal failed to pay the plaintiff and the persons described in ¶¶28-29, inclusive, above of this Complaint at the overtime rate required by 29 U.S.C. § 207(a)(1) for all hours worked over 40 in the same workweek that Duarte or some other similarly situated subcontractor of BCI like Duarte and defendants BCI and Carbajal or some other similarly situated project superintendent of BCI like defendant Carbajal jointly suffered or permitted the named plaintiff and each member of the

collective action to perform the work that is described in ¶¶28-29 above of this Complaint.

69.     During the entire time period relevant to this action, Duarte, the similarly situated subcontractors used by BCI, and the defendants did not maintain timekeeping and wage payment records in the manner required by 29 U.S.C. § 211(c) and its implementing regulations for the plaintiff and those employees that are described in ¶¶28-29, 30(a)-(b), and 37(a)-(b) above of this Complaint.

70.     During all of the two year time period immediately preceding the date this action was filed that includes all or part of calendar years 2020, 2021, and 2022 to date, Duarte or some other similarly situated subcontractor of BCI like Duarte and defendants BCI and Carbajal or some other similarly situated project superintendent of BCI like defendant Carbajal failed to pay to plaintiff and the employees described in ¶¶30(a)-(b) above promised wages under N.C.Gen.Stat. §§ 95-25.2(16), 95-25.6, 95-25.13(1)-(2) and 13 NCAC Tit. 12 § .0803 for all hours worked on their regular payday at a rate that was an additional and stipulated percentage of the regular rate for those hours worked in excess of 40 in the same workweek in addition to the promised regular rate for all hours worked in the same workweek by the plaintiff and other similarly situated employees whom defendant BCI jointly suffered or permitted to perform the bricklaying and cinderblock construction involved in the work that defendant BCI contracted to perform with the governmental entities that are described and referred to in ¶¶11-14 above.

71.     During all of the two year time period immediately preceding the date this

action was filed that includes all or part of calendar years 2020, 2021, and 2022 to date, Duarte or some other similarly situated subcontractor of BCI like Duarte and defendants BCI and Carbajal or some other similarly situated project superintendent of BCI like defendant Carbajal failed to pay to plaintiff and the employees described in ¶¶37(a)-(b) above promised wages under N.C.Gen.Stat. §§ 95-25.2(16), 95-25.6, 95-25.13(1)-(2) and 13 NCAC Tit. 12 § .0803 for all hours worked on their regular payday at the rate described in ¶¶18 and 49-50 above that  defendant BCI and its authorized agent(s) disclosed to the plaintiff which was a regular hourly rate with an additional and stipulated percentage of the regular rate for those hours worked in excess of 40 in the same workweek in addition to the promised regular rate for all hours worked in the same workweek by the plaintiff and other similarly situated employees whom defendant BCI jointly suffered or permitted to perform the bricklaying and cinderblock construction involved in the work that defendant BCI contracted to perform.

72.     As a direct and proximate result of the actions and omissions that are alleged in ¶¶44-45 above, the named plaintiff and the members of the collective action defined in ¶¶28-29 above who worked in excess of forty (40) hours per week in the same workweek did not receive wages at the rate and in the amount required by 29 U.S.C. § 207.

73.     As a direct and proximate result of the actions and omissions that are alleged in ¶¶46, 48, 49, and 70 above, the named plaintiff and the members of the class action defined in ¶¶30(a)-(b) above did not receive promised wages when those promised hourly

wages were due for all hours worked on their regular weekly payday at the rate and in the amount required by N.C.Gen.Stat. §§ 95-25.2(16), 95-25.6, 95-25.13(2), and 13 NCAC § 12.0803, the amount disclosed in ¶18 above, and the terms of the contracts described in ¶¶11-14 above.

74.     As a direct and proximate result of the actions and omissions that are alleged in ¶¶46-47 and 71 above, the named plaintiff and the members of the class action defined in ¶¶37(a)-(b) above did not receive promised hourly wages when those promised hourly wages were due for all hours worked on their regular weekly payday at the rate and in the amount required by N.C.Gen.Stat. §§ 95-25.2(16), 95-25.6, 95-25.13(2), and 13 NCAC § 12.0803, and in the amount that defendant BCI disclosed to them as described in ¶¶18 and 49-50 above.

75.     Long before 2015, the defendants BCI and Carbajal and the similarly situated project superintendents of BCI like Carbajal were and continue to be an experienced employer and project superintendent who were and continue to be familiar with the FLSA and the NCWHA, the requirements of both of those statutes with respect to what they require and required with respect to the wage rate to be paid for work in excess of forty (40) hours in the same workweek, and the obligation under the NCWHA to pay all wages when due.  Defendant BCI and its project superintendents like Carbajal acted in reckless and willful disregard of the requirements of the FLSA with respect to these matters, and as a consequence of this willful and reckless disregard of the rights of the plaintiff and the

members of the collective action defined in ¶¶28-29 to payment of wages at the overtime rate required by 29 U.S.C. § 207(a) have been violated for the entire three-year time period immediately preceding the date on which this action was filed.

X.    <u>FIRST CLAIM FOR RELIEF (FLSA § 207)</u>

76.    Paragraphs 1 through 29 and 44 through 75 above are realleged and incorporated herein by reference by the named plaintiff and each member of the collective action described in ¶¶28-29 above of this complaint that the named plaintiff seeks to represent pursuant to 29 U.S.C. §216(b) against the defendants for the brick and block masonry construction work that is described in ¶¶28-29 above.

77.    The defendants that are described in ¶¶28-29, 44-45, 51-52, 54-69, 72, and 75 above did not pay all wages due to the named plaintiff and the collective group of persons defined in ¶¶28-29 above of this complaint that the named plaintiff seeks to represent under 29 U.S.C. §216(b) at the rate required by 29 U.S.C. § 207(a) for the work described in ¶¶11-29, 44-45, 51-52, 54-69, and 72 above of this Complaint that was part of the defendant BCI's enterprise that is described in ¶¶16-17 above.

78.    As a result of the willful and reckless disregard of the right of the plaintiff and the members of the collective action defined in ¶¶28-29 above to payment of wages at the overtime rate required and described in 29 U.S.C. § 207(a), the named plaintiff and each such collective action member have suffered damages in the form of unpaid wages and liquidated damages that may be recovered under 29 U.S.C. §216(b).

37

XI.    SECOND CLAIM FOR RELIEF (NCWHA §§ 95-25.6 & 95-25.13(1)-(2))

79.    Paragraphs 1 through 27, 30-36, and 44-46, 48-65, 67, 69, 70, and 73 above are realleged and incorporated herein by reference by the named plaintiff and the class of persons defined in ¶¶30(a)-(b) above against defendants BCI and Carbajal.

80.    The defendants BCI and Carbajal and other similarly situated superintendents like Carbajal did not pay and will not pay all promised wages due when those wages were and will be due on the regular payday to the named plaintiff and the members of the class defined in ¶¶30(a)-(b) above for the work described in ¶¶11-27, 30-36, inclusive, 48-65, inclusive, and 67, 69-70, and 73 of this Complaint in violation of the disclosures described in ¶18 above, and N.C.Gen.Stat. §§ 95-25.13(1)-(2), 95-25.2(16), 95-25.6, and 13 NCAC §§12.0803 and 12.0805(a), and the material provisions of the contracts described in ¶¶11-14 and 32-33 above.

81.    As a result of these actions of defendant BCI and Duarte in violation of the rights of the named plaintiff and the members of the class defined in ¶¶30(a)-(b) above, the named plaintiff and the members of that class have suffered damages in the form of unpaid promised wages, interest on unpaid promised wages, liquidated damages, and interest on unpaid promised wages that may be recovered under N.C.Gen.Stat. §§95-25.22(a) and 95-25.22(a1).

XII.    THIRD CLAIM FOR RELIEF (NCWHA §§ 95-25.6 & 95-25.13(1)-(2))

82.    Paragraphs 1 through 27, 37-47, 49-53, 55-65, 67, 69, 71, and 74 above are

realleged and incorporated herein by reference by the named plaintiff and the class of persons defined in ¶¶37(a)-(b) above against defendants BCI and Carbajal.

83. The defendants BCI and Carbajal and other similarly situated superintendents like Carbajal did not pay and will not pay all promised wages due when those wages were and will be due on the regular payday to the named plaintiff and the members of the class defined in ¶¶37(a)-(b) above for the work described in ¶¶11-12, 37-47, 49-53, 55-65, 67, 69, 71, and 74 of this Complaint in violation of the disclosures described in ¶¶18, and 49-50 above, and N.C.Gen.Stat. §§ 95-25.13(1)-(2), 95-25.2(16), 95-25.6, and 13 NCAC §§12.0803 and 12.0805(a).

84. As a result of these actions of defendant BCI and Duarte in violation of the rights of the named plaintiff and the members of the class defined in ¶¶37(a)-(b) above, the named plaintiff and the members of that class have suffered damages in the form of unpaid promised wages, interest on unpaid promised wages, liquidated damages, and interest on unpaid promised wages that may be recovered under N.C.Gen.Stat. §§95-25.22(a) and 95-25.22(a1).

WHEREFORE the Plaintiff respectfully requests that the Court:

(a)     Grant a jury trial on all issues so triable;

(b)     Certify the named plaintiff as representative of the group of persons defined in ¶¶28-29 above of this Complaint in a collective action for back wages and liquidated damages under 29 U.S.C. §§ 207(a) and 216(b) pursuant to 29 U.S.C. §216(b);

39

(c)     Certify the named plaintiff as the representative of the class of persons defined in ¶¶30(a)-(b) above of this Complaint in a class action for payment of the promised wages that are described in ¶¶30(a)-(b) above, liquidated damages under N.C.Gen.Stat. §§ 95-25.2(16), 95-25.6, and 95-25.13(1)-(2) and 13 NCAC §§ .0803 and .0805(a)-(b) pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure;

(d)     Certify the named plaintiff as the representative of the class of persons defined in ¶¶37(a)-(b) above of this Complaint in a class action for payment of the promised wages that are described in ¶¶37(a)-(b) above, liquidated damages under N.C.Gen.Stat. §§ 95-25.2(16), 95-25.6, and 95-25.13(1)-(2) and 13 NCAC §§ .0803 and .0805(a)-(b) pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure;

(e)     Enter judgment under the FLSA against defendant Brodie Contractor Inc. and José Isabel Carbajal Chavez, jointly and severally, and in favor of the named plaintiff and each member of the collective action defined in ¶¶28-29 above for compensatory damages against the defendants under the First Claim for Relief in an amount equal to the total of the unpaid wages due the named plaintiff and each member of that same collective action under 29 U.S.C. §§ 207(a) and 216(b) for any workweek in which the named plaintiff and each member of that same collective action performed any of the work described in ¶¶11, 44-45, 68, and 72 above of this Complaint in the enterprise that is described in ¶¶16-17 above of this Complaint, plus an equal additional amount as liquidated damages under 29 U.S.C. § 216(b);

40

(f)     Enter judgment under the NCWHA against defendant Brodie Contractors Inc., and in favor of the named plaintiff and each member of the class action defined in ¶¶30(a)-(b) above for compensatory damages against the defendants under the Second Claim for Relief in an amount equal to the total of the unpaid wages due the named plaintiff and each member of that same class action under N.C.Gen.Stat. §§ 95-25.2(16), 95-25.6, 95-25.13(1)-(2), 13 NCAC Tit. 12 §§ .0803 and .0805(a), and 95-25.22(a) for any workweek in which the named plaintiff and each member of that same class action performed any of the work described in ¶¶11-13, 18, 30(a)-(b), 44-46, 48-49, 70, and 73 above of this Complaint, plus an equal additional amount as liquidated damages under N.C.Gen.Stat. § 95-25.22(a1), plus any interest in the manner and at the rate authorized by N.C.Gen.Stat. § 95-25.22(a);

(g)     Enter judgment under the NCWHA against defendant Brodie Contractors Inc., and in favor of the named plaintiff and each member of the class action defined in ¶¶37(a)-(b) above for compensatory damages against the defendants under the Second Claim for Relief in an amount equal to the total of the unpaid wages due the named plaintiff and each member of that same class action under N.C.Gen.Stat. §§ 95-25.2(16), 95-25.6, 95-25.13(1)-(2), 13 NCAC Tit. 12 §§ .0803 and .0805(a), and 95-25.22(a) for any workweek in which the named plaintiff and each member of that same class action performed any of the work described in ¶¶11, 18, 37(a)-(b), 44-47, 48-49, 71, and 74 above of this Complaint, plus an equal additional amount as liquidated damages under

41

N.C.Gen.Stat. § 95-25.22(a1), plus any interest in the manner and at the rate authorized by N.C.Gen.Stat. § 95-25.22(a);

(h)     Award the named plaintiff and the employees he seeks to represent the costs of this action against defendant Brodie Contractors Inc. and José Isabel Carbajal Chavez, jointly and severally, pursuant to 29 U.S.C. § 216(b) and N.C.Gen.Stat. § 95-25.22(d);

(i)     Award the named plaintiff and the employees he seeks to represent a reasonable attorney fees under and N.C.Gen.Stat. §95-25.22(d) and 29 U.S.C. §216(b) against the defendant Brodie Contractors Inc. and José Isabel Carbajal Chavez, jointly and severally;

(j)     Award prejudgment and post judgment interest against the defendant Brodie Contractors Inc. pursuant to N.C.Gen.Stat. § 95-25.22(a) at the rate authorized by N.C.Gen.Stat. § 24-1 on any amount of promised wages awarded as damages as requested in paragraph (e) of this Prayer for Relief based upon such date(s) as may be appropriate under applicable law;

(k)     Award such other relief as may be just and proper in this action.

This the 18th day of April, 2022.

                       LAW OFFICE OF ROBERT J. WILLIS, P.A.

BY:/s/<u>Robert J. Willis</u>
       Robert J. Willis
       Attorney at Law
       NC Bar #10730
       (mailing address)
       P.O. Box 1828
       Pittsboro, NC  27312
       Tel:(919)821-9031
       Fax:(919)821-1763
       488 Thompson Street
       Pittsboro, NC  27312
       Co-Counsel for Plaintiff
       rwillis@rjwillis-law.com

       CHRIS HAAF LAW PLLC
       BY:/s/<u>Chris W. Haaf</u>
       Chris W. Haaf
       NC Bar #46077
       2806 Reynolda Road #123
       Winston-Salem, NC 27106
       Tel: (336) 354-7643
       Fax: (336) 770-2781
       chris@haaflegal.com
       Co-Counsel for Plaintiff

43

**CONSENT TO SUE**

I, _Jorge Reyes Bermudez_ , hereby consent to be a party under 29 U.S.C. §216(b) to this lawsuit to assert my right to the lawful wage required by the Fair Labor Standards Act.

_Jorge Reyes Bermudez_
SIGNATURE

_8−18−21_
DATE